## Case No. 8,559.

### LOW et al. v. ANDREWS et al.

### [1 Story, 38.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1839.

SALE—CONTRACT TO DELIVER—STATUTE OF FRAUDS —LEX LOCI CONTRACTUS—LOSS OF GOODS IN TRANSITU—BILL OF LADING.

A contract was made in France between A. and B., by which certain goods were to be procured to be manufactured by A. and transmitted by him through B.'s agents at Havre, with instructions as to their further transmission. Two cases of goods were sent to Havre, and forwarded by B.'s agents with bills of lading in one vessel, the invoice of one of the cases having been sent by a previous vessel. The latter case having arrived in a different vessel from that in which the invoice was sent, was not claimed, and was sent to the public storehouse, where it was burnt. *Held*, that there was no sale by A. to B., but only a contract to deliver goods. That the statute of frauds did not apply, because the contract was made in France. That A. was legally discharged from all control over the goods upon their arrival at Havre. That it was incumbent on B. to show any omission on the part of A. to instruct B.'s agents as to the transmission of the goods from Havre, and that the loss of the goods was in consequence of such omission. That the putting of goods on board a vessel and transmitting bills of lading vested the property in the consignee, though the bill of lading should not arrive. That A. was not bound to send a duplicate invoice, under these circumstances, in the absence of an invariable custom. That B. was guilty of neglect in not making search for the goods, which did not arrive as by the invoice.

[Cited in Cochran v. Ward, 5 Ind. App. 95, 29 N. E. 797, and 31 N. E. 581.]

This is an action of assumpsit to recover the price of a case of black silk cravats, contracted to be delivered under the following circumstances: The plaintiffs are commission merchants, residing in Paris. They receive orders and furnish goods for the American market. The defendants are wholesale dealers in French goods, residing in Boston. Mr. Andrews, one of the defendants, visited France in the autumn of 1836, and contracted with the plaintiffs for a quantity of silk goods, and among them two cases of silk cravats, containing a hundred dozen in each case. The terms of the contract were, that the plaintiffs should procure the goods to be

[1] [Reported by William W. Story, Esq.]

manufactured, should send them to Welles & Greene, at Havre, to be shipped to the house of Mr. Andrews in America. One of the clerks of Low & Berry, who testified to this contract, stated that Mr. Andrews spoke of Welles & Greene as "his agents," and said that they had been directed by him to follow the plaintiffs' instructions as to the shipment. Another clerk testified, that Mr. Andrews directed the plaintiffs to order Welles & Greene to ship them to him at Boston, "through Chadwick & Carrington, at New York." It also appeared that he directed the cases to be marked C. A. 13 and C. A. 14. The plaintiffs immediately transmitted orders to the manufacturers in Germany to have the cravats made, packed in cases, and marked as above, and sent to Welles & Greene, at Havre. It appeared that the manufacturers did not know the defendants in the case, nor for whom the goods were destined. They were made wholly on account of the plaintiffs. They were manufactured, packed, marked, and sent to Welles & Greene, at Havre, by roulage (or baggage-wagon). The letter containing the invoice of the case marked C. A. 13, written by the manufacturers to plaintiffs, was dated December 24, 1836; that containing the invoice of case C. A. 14, was written December 31, 1836. The plaintiffs sent an invoice of the first case (C. A. 13) to the defendants, by the packet Formosa, which sailed from Havre on the 16th of January, supposing that the case would arrive at Havre in time to go by that packet; and they sent an invoice of the second case by the François I., which sailed on the 27th of January. These invoices were duly received. In point of fact, the case marked C. A. 13, did not arrive at Havre until January 18th, and the case C. A. 14, arrived January 24th, and both were sent by the François I. Before they had arrived at Havre, Mr. Andrews had directed the plaintiffs to order Welles & Greene to change the marks on the cases from C. A. to A. & Co., preserving the same numbers, and instructions were accordingly sent to that effect at the time the goods were supposed to be at Havre.

Welles & Greene received the goods by roulage, or a baggage-wagon, changed the marks, had them duly shipped, and sent a bill of lading of both cases to the defendants at Boston, and debited the shipping charges to the defendants, through Welles & Co. of Paris, and the defendants subsequently paid them. The goods were landed at New York; the case A. & Co. 14, was entered at the custom house by Chadwick & Co. (defendants' agents) by the invoice, transmitted by defendants from Boston. They had also entered the case No. 13, by the invoice, as having arrived in the Formosa, but of course did not find it on board of her. Having arrived in the François I., and not being claimed, it was sent to the public store, and there burnt in a fire which consumed the building. The bill of lading, it does not ap-

pear was ever received. No duplicate invoice was ever sent of case No. 13. It appeared in evidence, that Low & Berry had no control over the goods after leaving the manufacturers, as they were under the charge of government officers, in their transit across the kingdom of France. It also appeared, that it was a common occurrence for invoices of transit goods, that is, goods sent from Switzerland or Germany through France, to come without the goods themselves; the merchant at Paris writing by the packet, which he supposed would carry them, but that in point of fact they sometimes would arrive too late, and in such case, they were always looked for in the next packet. It did not appear, that it was the general usage to send duplicate invoices. It was not ascertained, that the case No. 13, had arrived in the François I. until after the fire. On examining the manifest of the cargo, and the receipt of the storekeeper, it was found that it had been stored and burnt.

Upon these facts the defendants contended, That the sale was void, there being no memorandum in writing as required by the statute of frauds. That Welles & Greene were agents of the plaintiffs, who were responsible for their omissions and neglects. That the orders of Mr. Andrews were not complied with, as he directed the goods to be shipped to him through Chadwick & Co. That the plaintiffs were guilty of neglect in not informing the defendants, that the case No. 13, did not go by the Formosa, and in not sending duplicate invoices. That there was no such delivery as to vest the property in the defendants. Upon these points, the case was submitted to the jury. Other matters were commented upon, not material to the issue.

George S. Hillard, for plaintiffs.

Bradford Sumner and Charles Mason, for defendants.

STORY, Circuit Justice, in his charge, stated the law as follows: That the statute of frauds did not apply, the contract taking place in France; and besides, that it was a contract by the plaintiffs to deliver goods, and not a sale, the goods not being in existence at the time. That Welles & Greene were the agents of the defendants, and not of the plaintiffs, which appeared from the statements of Mr. Andrews, from his direction as to the change of the marks, and from the fact, that the shipping charges were debited to the defendants and paid by them. That the plaintiffs were legally discharged from all control over the goods after their arrival at Havre. That it was incumbent on the defendants to show, that the plaintiffs had omitted to instruct Welles & Greene to transmit the goods through Chadwick & Co.; and that, in any event, the plaintiffs should not suffer in consequence of that neglect, if the jury were satisfied, that the loss would have

happened, none the less, had the instructions been complied with. That the putting of goods on board a vessel and transmitting a bill of lading would vest the property in the consignee, though the bill of lading should not arrive, and that it is enough to show, that the usual precautions had been taken to insure its being received, without showing the fact itself. That in the absence of any invariable custom, the plaintiffs were not legally bound to send a duplicate invoice on learning, that the case No. 13 had not gone in the Formosa. That the defendants or their agents in New York were guilty of neglect, in not making search for case No. 13, among the cargo of the François I., it being shown, that when goods did not accompany the invoice, they were invariably looked for in the next packet.[2]

The jury found for the plaintiffs.

---

[2] The case of Bryans v. Nix, 4 Mees. & W. 791. contains some remarks of Mr. Baron Parke, very strong to the point of this case when the property vested in Andrews.
[1] [Reported by John William Wallace, Esq.]